UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SENATOR CHARLANE OLIVER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>RANDY MCNALLY, in his individual and official capacity as Speaker of the Tennessee Senate, RUSSELL HUMPHREY, in his individual and official capacity as Chief Clerk of the Tennessee Senate, and KRISTA LEE CARSNER, in her official capacity as Director of Legislative Administration of the Tennessee General Assembly,<br><br>Defendants. | ) | No. 3:26-cv-01376<br>Chief Judge Campbell<br>Magistrate Judge Frensley |

# DEFENDANTS' MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

BACKGROUND ........ 1

LEGAL STANDARD ........ 4

ARGUMENT ........ 5

I. Legislative Immunity Bars Plaintiffs' Claims. ........ 5

II. This Court Lacks Subject-Matter Jurisdiction Over Some Claims Due To Plaintiffs' Lack of Standing and Sovereign Immunity. ........ 9

A. Plaintiffs lack standing for multiple claims in the Complaint. ........ 9

1. The Constituent Plaintiffs fail to allege a "concrete and particularized" injury to their personal rights. ........ 10

2. Plaintiffs lack standing to request injunctive relief predicated on Senator Oliver's inability to vote. ........ 11

B. Sovereign immunity bars Plaintiffs' claims for injunctive relief against Defendants in their official capacity predicated on Senator Oliver's inability to vote. ........ 13

C. Sovereign immunity bars Plaintiffs' state-law claims. ........ 15

III. Plaintiffs' Claims Are Barred By Qualified Immunity. ........ 15

IV. Plaintiffs Fail to State a Claim on Which Relief May Be Granted. ........ 16

A. Senator Oliver fails to state a claim under the First Amendment Right to Free Speech. ........ 17

B. Senator Oliver fails to state a claim under the First Amendment Right to Freedom of Association. ........ 19

C. Plaintiffs fail to state a viable Equal Protection claim. ........ 20

D. Plaintiffs fail to state a claim under the Tennessee Constitution. ........ 23

CONCLUSION ........ 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albright v. Oliver*,
510 U.S. 266 (1994) .......... 4

*Anderson v. Creighton*,
483 U.S. 635 (1987) .......... 16

*Armengau v. Cline*,
7 F. App'x. 336 (6th Cir. 2001) .......... 2

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) .......... 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 22

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*,
502 F.3d 545 (6th Cir. 2007) .......... 4

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
528 F.3d 426 (6th Cir. 2008) .......... 2

*Bell Atl. Corp. v. Twombley*,
550 U.S. 544 (2007) .......... 4

*Bell v. City of Southfield, Mich.*,
37 F.4th 362 (6th Cir. 2022) .......... 2

*Bench Billboard Co. v. City of Cincinnati*,
675 F.3d 974 (6th Cir. 2012) .......... 21

*Bogan v. Scott-Harris*,
523 U.S. 44 (1998) .......... 5, 8, 9

*Boler v. Earley*,
865 F.3d 391 (6th Cir. 2017) .......... 13

*Bower v. Fed. Express Corp.*,
96 F.3d 200 (6th Cir. 1996) .......... 4

*Brennan v. Township of Northville*,
78 F.3d 1152 (6th Cir. 1996) .......... 16

*Brown v. Montoya*,
662 F.3d 1152 (10th Cir. 2011) .......... 13

*Buchanan v. City of Bolivar*,
99F.3d 1352, 1360 (6th Cir. 1996) .......... 20

*Bush v. Gore*,
531 U.S. 98 (2000) .......... 23

*Carney v. Adams*,
592 U.S. 53 (2020) .......... 10

*Center for Bio-Ethical Reform, Inc. v. Napolitano*,
648 F.3d 365 (6th Cir. 2011) .......... 21

*Church v. Missouri*,
913 F.3d 736 (8th Cir. 2019) .......... 5

*Combs v. Wilkinson*,
315 F.3d 548 (6th Cir. 2002) .......... 15

*Common Cause of Pennsylvania v. Pennsylvania*,
558 F.3d 249 (3d Cir. 2009) .......... 10

*Consumers Union of the U.S. v. Periodical Correspondents' Ass'n*,
515 F.2d 1341 (D.C. Cir. 1975) .......... 5, 8

*Curtis v. Breathitt Cnty. Fiscal Ct.*,
756 F. App'x 519 (6th Cir. 2018) .......... 17

*Davids v. Akers*,
549 F.2d 120 (9th Cir. 1977) .......... 9, 22

*Diaz v. Mich. Dep't of Corr.*,
703 F.3d 956 (6th Cir. 2013) .......... 13

*Doe v. McMillan*,
412 U.S. 306 (1973) .......... 5

*Dugan v. Rank*,
372 U.S. 609 (1963) .......... 14

*Eastland v. U.S. Servicemen's Fund*,
421 U.S. 491 (1975) .......... 7

*Fields v. Office of Johnson*,
459 F.3d 1 (D.C. Cir. 2006) .......... 6

*Gamrat v. McBroom*,
822 F. App'x 331 (6th Cir. 2020) .......... 8

*Gault v. City of Battle Creek*,
73 F.3d 266 (9th Cir. 1995) .......... 18

*Golden v. Gorno Bros., Inc.*,
410 F.3d 879, 881 (6th Cir. 2004) .......... 4

*Gravel v. United States*,
408 U.S. 606 (1972) .......... 7

*Greenawalt v. Indiana Dep't of Corr.*,
397 F.3d 587 (7th Cir. 2005) .......... 13

*Hans v. Louisiana*,
134 U.S. 1 (1890) .......... 13

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) .......... 15

*Harrison v. American Airlines, Inc.*,
760 F.Supp. 545 (M.D. Tenn. 2024) .......... 2

*Hawaii v. Gordon*,
373 U.S. 57 (1963) .......... 14

*Heffron v. Int'l Soc. For Krishna Consciousness, Inc.*,
452 U.S. 640 (1981) .......... 17

*Johns v. Sup. Ct. of Ohio*,
753 F.2d 524 (6th Cir. 1985) .......... 15

*Johnson City v. Tenn. E. Elec. Co.*,
182 S.W. 587 (Tenn. 1915) .......... 12

*Jones v. Sexton*,
No. 3:23-CV-01033, 2025 WL 3000203 (M.D. Tenn. Oct. 24, 2025) .......... 7, 21

*Kent v. Ohio House of Representatives Democratic Caucus*,
33 F.4th 359 (6th Cir. 2022) .......... 5, 7, 8

*Kilbourn v. Thompson*,
103 U.S. 168 (1880) .......... 7

*Larson v. Domestic & Foreign Com. Corp.*,
337 U.S. 682 (1949) .......... 14

*Lewis v. Casey*,
518 U.S. 343 (1996) .......... 10

*Linthicum v. Wagner*,
94 F.4th 887 (9th Cir. 2024) .......... 18

*McCann v. Brady*,
909 F.3d 193 (7th Cir. 2018) .......... 7

*McGuinn v. Smith*,
No. 11-CV-4761, 2015 WL 12731755 (S.D.N.Y. 2015) .......... 17

*Miller v. City of Cincinnati*,
622 F.3d 524 (6th Cir. 2010) .......... 20

*Monserrate v. N.Y. State Senate*,
599 F.3d 148 (2d Cir. 2010) .......... 17

*Morgan v. Bd. of Pro. Resp.*,
63 F.4th 510 (6th Cir. 2023) .......... 13

*Moses v. Lee*,
No. 3:26-CV-00694, 2026 WL 2884879 (M.D. Tenn. Sept. 25, 2026) .......... 22

*Nali v. Ekman*,
355 Fed Appx. 909 (6th Cir. 2009) .......... 22

*Nat'l Ass'n of Soc. Workers v. Harwood*,
69 F.3d 622 (1st Cir. 1995) .......... 6, 8

*Nevada Com'n on Ethics v. Carrigan*,
564 U.S. 117 (2011) .......... 18

*Nordlinger v. Hahn*,
505 U.S. 1 (1992) .......... 21

*Ohio Nat'l Life Ins. Co. v. United States*,
922 F.2d 320 (6th Cir. 1990) .......... 4

*Pearson v. Callahan*,
555 U.S. 223 (2009) .......... 15, 16

*Pennhurst State Sch. & Hosp. v. Halderman*,
465 U.S. 89 (1984) .......... 15

*Pennoyer v. McConnaughy*,
140 U.S. 1 (1891) .......... 14

*Powell v. McCormack*,
395 U.S. 486 (1969) .......... 6

*R.K. by and through J.K. v. Lee*,
53 F.4th 995 (6th Cir. 2022) .......... 13

*Reynolds v. Sims*,
377 U.S. 533 (1964) .......... 22

*Rivera v. Saris*,
130 F. Supp. 3d 397 (D.D.C. 2015) .......... 6

*Roberts v. United States Jaycees*,
468 U.S. 609 (1984) .......... 19

*Rumsfeld v. Forum For Academic and Inst. Rights, Inc.*,
547 U.S. 47 (2006) .......... 20

*Russell v. Lundergan-Grimes*,
784 F.3d 1037 (6th Cir. 2015) .......... 13

*Scott v. Harris*,
550 U.S. 372 (2007) .......... 2

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996) .......... 13

*Seum v. Osborne*,
348 F.Supp.3d 616 .......... 6

*Shields v. Charter Twp. of Comstock*,
617 F. Supp. 2d 606 (W.D. Mich 2009) .......... 18

*Siefert v. Hamilton Cnty.*,
951 F.3d 753 (6th Cir. 2020) .......... 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 10

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 9

*Swanson v. Burns*,
No. 1:25-CV-00701-TRJ, 2026 WL 974843 (N.D. Ga. Feb. 25, 2026) .......... 11

*Tenney v. Brandhove*,
341 U.S. 367 (1951) .......... 5, 8, 9

*Thaddeus-X v. Blatter*,
175 F.3d 378 (6th Cir. 1999) (en banc) .......... 18

*TransAmerica Assur. Corp. v. Settlement Cap. Corp.*,
489 F.3d 256 (6th Cir. 2007)....................14

*TriHealth, Inc. v. Bd. of Comm'rs*,
430 F.3d 783 (6th Cir. 2005)....................21

*United States v. Johnson*,
383 U.S. 169 (1966)....................7

*United States v. Ritchie*,
15 F.3d 592 (6th Cir. 1994)....................4

*Universal Life Church Monastery Storehouse v. Nabors*,
35 F.4th 1021 (6th Cir. 2022)....................10

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
454 U.S. 464 (1982)....................10

*Warth v. Seldin*,
422 U.S. 490 (1975)....................10

*White v. City of Norwalk*,
900 F.2d 1421 (9th Cir. 1990)....................17

*Whitener v. McWatters*,
112 F.3d 740 (4th Cir. 1997)....................6, 8, 19

*Will v. Mich Dep't of State Police*,
491 U.S. 58 (1989)....................13

*Wingo v. Tennessee Dep't of Corr.*,
499 F. App'x 453 (6th Cir. 2012)....................13

*Ex parte Young*,
209 U.S. 123 (1908)....................13, 14

**Statutes**

Tennessee Code Annotated § 3-1-106(a), (b)(2)....................23

**Other Authorities**

Fed. R. Civ. P. 8(a)(2)....................5

Fed. R. Civ. P. 12(b)(1)....................1, 4, 6, 9

Fed. R. Civ. P. 12(b)(6)....................1, 4, 16

Tenn. Const. Art. II, § 12....................6, 15, 23

Tennessee Constitution Art. II, § 23 .......... 24

U.S. Const. Art. I, § 6, cl. 1 .......... 5

U.S. Const. Art. III, § 2, cl. 1 .......... 9

Joseph Story, *Commentaries on the Constitution of the United States* § 419. .......... 6

## INTRODUCTION

Senator Oliver breached the Permanent Senate Rules by speaking beyond her allotted time, standing on her desk, unfurling a banner, and singing to disrupt the vote on a bill being considered on the Senate Floor. Her behavior was inappropriate for the Senate chamber, and it is not protected by the United States Constitution. The Tennessee Constitution and the Permanent Senate Rules empower the Lieutenant Governor to discipline unruly senators, and such discipline, so long as the rules are applied reasonably and neutrally, does not violate the constitutional rights of the offending legislator or their constituents.

Defendants thus move to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs' attempts to meddle in the internal affairs of the Tennessee General Assembly suffer from jurisdictional defects or are barred by one form of immunity or another. And even on the merits, they fail to state a claim upon which relief may be granted. For the reasons below, this Court should dismiss the Complaint in its entirety.

## BACKGROUND[1]

In May 2026, Governor Bill Lee called for a special session of the General Assembly. Compl. ¶ 3. During that special session, the General Assembly considered a new congressional district map. *Id.* Unsatisfied with typical legislative debate, "Democratic lawmakers sought to amplify public opposition to the redistricting effort." Comp. ¶ 35. Senator Oliver opposed passage of the map, and she made that opposition known. *Id.* ¶ 3. Among the senators who made statements in opposition to the passage of the map on the Senate Floor, Senator Oliver spoke last. *Id.* ¶ 4. Each speaker was allowed twenty minutes. *Id.* ¶ 39. Permanent Senate Rule 12 ("[N]o member shall speak longer than twenty (20) minutes in the first speech . . . on any question, unless by consent of the Senate.")

[1] The facts cited in the Complaint are presumed true solely for the purposes of this motion. They are not otherwise admitted.

(Attached as Ex. 1).[2] The live stream video of the floor session shows that Senator Oliver began speaking at timestamp 2:57:43. Senate Session Live Stream, May 7, 2026, https://perma.cc/MG72-Q3L7 (last visited Oct. 23, 2026).[3] At nearly twenty minutes, Lieutenant Governor McNally warned Senator Oliver about her time and offered her time to "wrap up." *Id.* at 3:16:54. Senator Oliver, however, continued speaking after her time had elapsed until Lieutenant Governor McNally thanked her and her microphone was turned off. *Id.* at 3:18:15. That should have been the end of normal debate.

But Senator Oliver did not follow the Permanent Senate Rules, and she "[r]efus[ed] to be silenced." Compl. ¶ 43. Senator Oliver continued speaking while chants by other democratic party senators erupted on the Senate floor. *Id.* at 3:18:26-3:19:58; Compl. ¶ 42. Eventually, Senator Oliver escalated to unfurling a banner and standing on her senate desk, *id.* at 3:19:58; Compl. ¶ 6—actions inconsistent with the "order and decorum" that Lieutenant Governor McNally is responsible for "preserv[ing]." Permanent Senate Rule 2.

While Senator Oliver was standing on her desk, Lieutenant Governor McNally announced, "you have to be in your seat to vote," as the Permanent Senate Rules require members to "vote only at [their] desk." Compl. ¶ 46; Permanent Senate Rule 59. Senator Oliver "bent down while standing

---

[2] The Permanent Rules of Order of the Senate for the One Hundred and Fourteenth General Assembly are cited in the Complaint, and Plaintiffs provided a link to those rules. Thus, they may be considered for this motion to dismiss. "[I]n evaluating a motion to dismiss, the Court may consider the complaint and the exhibits attached. . . . The Sixth Circuit also permits courts to consider other items in assessing a motion to dismiss, such as "documents attached to a motion to dismiss" that are "referred to in a complaint and [are] central to the claims," "public records, [and] matters of which a court may take judicial notice[.]" *Harrison v. American Airlines, Inc.*, 760 F.Supp. 545, 556 (M.D. Tenn. 2024) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Armengau v. Cline*, 7 F. App'x. 336, 344 (6th Cir. 2001)).

[3] The Senate Session live stream is cited extensively in the Complaint, and thus may be considered for this motion to dismiss. To the extent that the Senate Session live stream contradicts the Complaint, the court may "rely on the videos over the complaint to the degree the videos are clear and 'blatantly contradict[]' or 'utterly discredit[]' the plaintiff's version of events." *Bell v. City of Southfield, Mich.*, 37 F.4th 362, 364 (6th Cir. 2022) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

on her desk to vote against H.B. 7003 by using the electronic voting system on the desk." *Id.* ¶ 47; Senate Session Live Stream, at 3:26:12. After the vote was announced, she bent down again. Senate Session Live Stream, at 3:26:27. Video of the session does not show Senator Oliver making any other attempt to vote. *Id.* at 3:25:55-3:26:35. The bill passed with 25 votes in favor and 5 opposed. Compl. ¶ 49. No vote was recorded from Senator Oliver. *Id.*

After the special session and following Senator Oliver's disruption, Lieutenant Governor McNally informed Senator Oliver that her actions on the Senate floor violated the Permanent Senate Rules for order and decorum in the chamber. McNally Letter, Dkt. 1-1. And in the same letter, he informed Senator Oliver that she would only be approved for per diem on days the General Assembly is in session or on days that her attendance is required for a standing committee meeting; that she would not be approved for reimbursement for travel to any legislative conferences held outside of Tennessee; and that she had been reassigned from the Government Operations Committee to the State and Local Government Committee. *Id.*

In response to Senator Oliver's demand that the legislative record be amended and that all discipline be rescinded, Demand Letter, Dkt. 1-4, PageID# 44, Senator McNally explained in a public statement that Senator Oliver was not prevented from voting and that "[t]he vote had been called and the board was closed, just as it was for every other senator." Compl. ¶ 70. And Lieutenant Governor McNally reaffirmed that Senator Oliver's behavior on the senate floor was an "immature, aberrant and disrespectful display." *Id.*

Subsequently, Senator Oliver and Plaintiffs Cummings, Glapion, Moten, and Wesley (collectively "the Constituent Plaintiffs") filed this lawsuit. Senator Oliver alleges that she suffered retaliation for exercising her First Amendment rights when she was disciplined for her behavior on the Senate floor and when she was prevented from voting during her protest (Count I). She further claims that her speech is being suppressed and her right to associate with others is burdened (Counts

II and III). Senator Oliver and the Constituent Plaintiffs claim that they have suffered discrimination (without identifying any similarly situated individuals) (Count IV) and that Defendants' actions do not follow the Tennessee Constitution's provisions regarding discipline of legislators (Count V). Now, Defendants move to dismiss all of these claims.

## LEGAL STANDARD

Defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) "may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction." *Golden v. Gorno Bros., Inc.*, 410 F.3d 879, 881 (6th Cir. 2004). "A facial attack is a challenge to the sufficiency of the pleading itself[,]" and "the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "A factual attack, on the other hand, is ... a challenge to the factual existence of subject matter jurisdiction." *Id.* In the context of a factual attack, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (citation omitted). In reviewing factual motions, "a trial court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. In a light most favorable to the plaintiff, the court must assume that the plaintiff's allegations are true and determine whether the complaint states a valid claim for relief. *Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Fed. Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996). To survive a motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombley*, 550

U.S. 544, 555 (2007); *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 679. Additionally, determining whether a complaint states a plausible claim for relief is a context-specific task that requires the court to draw on its experience and common sense. *Id.* Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

### I. Legislative Immunity Bars Plaintiffs' Claims.

The complaint should be dismissed in its entirety because absolute legislative immunity bars all of Plaintiffs' claims. State legislators, legislative staff, and those non-legislative officials who act in a legislative capacity are immune from suits resulting from legislative business.[4] *Doe v. McMillan*, 412 U.S. 306, 312 (1973). Legislative immunity protects "lawmakers from lawsuits for their legislative acts." *Kent v. Ohio House of Representatives Democratic Caucus*, 33 F.4th 359, 360 (6th Cir. 2022). And it covers "all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998) (quoting *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)). Not only does it bar suits for "monetary damages," it also bars suits for "prospective relief." *Kent*, 33 F.4th at 364; *See Church v.*

---

[4] While federal legislators receive immunity from the Speech and Debate Clause, U.S. Const. Art. I, § 6, cl. 1, state legislators enjoy federal common-law immunity not abrogated by Section 1983, *see, e.g.*, *Bogan*, 523 U.S. at 49; *Tenney*, 341 U.S. at 369-76. The Supreme Court has "equated" the two forms of legislative immunity, *Consumers Union*, 446 U.S. at 733, and courts "use[] the relevant case law interchangeably." *Kent*, 33 F.4th at 364 (citation omitted).

*Missouri*, 913 F.3d 736, 753 (8th Cir. 2019) ("Even if the governor's appropriation-reduction authority is not shielded by sovereign immunity through *Ex Parte Young*, legislative immunity, a separate defense forecloses suit against the governor." (citing *Sup. Ct. of Va. V. Consumers Union of U.S., Inc.*, 446 U.S. 719, 733 (1980))). And legislative immunity is a "jurisdictional bar." *Fields v. Office of Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006); *see also Rivera v. Saris*, 130 F. Supp. 3d 397, 402 (D.D.C. 2015) (noting that legislative immunity as it pertains to Congress's Speech or Debate Clause is "jurisdictional in nature"); *Seum v. Osborne*, 348 F.Supp.3d 616, 629 (evaluating legislative immunity under Rule 12(b)(1)). Here, legislative immunity bars all of Plaintiffs' claims because Defendants' alleged acts were legislative functions.

The Tennessee Constitution vests the Senate with the authority to "determine the rules of its proceedings" and to "punish its members for disorderly behavior." Tenn. Const. Art. II, § 12. Legislatures' authority to determine the rules of their own proceedings would be worthless "unless it was coupled with a power to punish for disorderly behavior, or disobedience to those rules." Joseph Story, *Commentaries on the Constitution of the United States* § 419. Indeed, the power of self-discipline "is the primary power by which legislative bodies preserve their 'institutional integrity' without compromising the principle that citizens may choose their representatives." *Whitener v. McWatters*, 112 F.3d 740, 744 (4th Cir. 1997) (citing *Powell v. McCormack*, 395 U.S. 486, 548 (1969)). The Permanent Rules of Order of the Senate for the 114th General Assembly entrust Lieutenant Governor McNally with the power the preserve its "institutional integrity" by charging him with the duty to "preserve order and decorum." Permanent Rules of Order of the Senate for the 114th General Assembly, Rule 2. And Chief Clerk Humphrey and Director Carsner "work under the direction of the Speaker." *Id.* at Rule 5.

Senator Oliver complains solely of Defendants' enforcement of the Permanent Senate Rules of decorum. Legislative immunity protects "not only speech and debate per se," *Nat'l Ass'n of Soc.*

*Workers v. Harwood*, 69 F.3d 622, 630 (1st Cir. 1995), but all activities "generally done in a session of the [legislature] by one of its members in relation to the business before it," *Gravel v. United States*, 408 U.S. 606, 623-24 (1972) (citation omitted). Courts do not take a "'narrow view'" of legislative immunity, *Kent*, 33 F.4th at 363 (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)), instead Courts apply it "broadly to effectuate its purposes," *United States v. Johnson*, 383 U.S. 169, 180 (1966); *see Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 (1975). Legislative immunity thus applies to "matters 'integral' to legislators' deliberative and communicative processes for evaluating bills, voting, or performing other tasks within their jurisdiction." *Kent*, 33 F.4th at 365 (citation omitted) (cleaned up). And "[c]ase law is generally clear that self-disciplinary actions . . . are legislative acts" and "those conducting them are entitled to legislative immunity." *Jones v. Sexton*, No. 3:23-CV-01033, 2025 WL 3000203, at *24 (M.D. Tenn. Oct. 24, 2025).

Courts in this Circuit and others consistently recognize absolute legislative immunity against claims based on self-disciplinary actions. Recently, the Middle District of Tennessee held that the Speaker of the Tennessee House of Representatives and Assistant Chief Clerk of the Tennessee House of Representatives were entitled to legislative immunity from claims related to the expulsion of Representative Justin Jones, denial of his committee assignments, and application of House rules to him. *Jones*, 2025 WL 3000203, at *23. There, the Court held "[T]his Court can come to only one conclusion: [Defendants] are entitled to legislative immunity with respect to their conduct in disciplining Plaintiff." *Id.* at *25. The Sixth Circuit has likewise held that Ohio legislators possessed legislative immunity related to the expulsion of a member from the Democratic caucus. *Kent*, 33 F.4th at 366. The court there explained that "excluding a representative" from caucus membership "is 'part and parcel' of" the caucus's "'deliberative and communicative processes.'" *Id.*; *see also McCann v. Brady*, 909 F.3d 193, 197 (7th Cir. 2018) (Illinois legislators entitled to legislative immunity for allegedly expelling a member from their Republican caucus). And the Sixth Circuit applied legislative immunity

to a dispute over the Michigan House's expulsion of one of its members. The "House's expulsion of [that member] was legislative activity, regardless of any bad faith, and [the member] cannot sue the House Defendants for participating in that process. *Gamrat v. McBroom*, 822 F. App'x 331, 334 (6th Cir. 2020), *cert. denied sub nom. Bauer v. McBroom*, 141 S. Ct. 1700 (2021) (mem.). The Fourth Circuit has aptly articulated that "a legislative body's discipline of one of its members is a core legislative act" when barring an expelled member's First Amendment and due process claims. *Whitener v. McWatters*, 112 F.3d at 741.

Here, Defendants' actions to "preserve order and decorum" of the Tennessee Senate are within "the sphere of legitimate legislative activity," *Bogan*, 523 U.S. at 54 (quoting *Tenney*, 341 U.S. at 376). All of Plaintiffs' claims are based on three allegations regarding the consequences of Senator Oliver's unbecoming behavior: (1) the prevention of Senator Oliver from casting a vote on the bill before the Senate; (2) her removal from her preferred Senate committee and refusal to pay the per diem for out-of-session work associated with that committee; and (3) denial of her travel reimbursements. *See* Compl. ¶¶ 99, 100, 101, 128. Lieutenant Governor McNally's disciplinary decisions regarding Senator Oliver's committee assignment and allocation of the Senate's resources are part of the Senate's "ability to structure the deliberative process as they see fit." *See Kent*, 33 F.4th at 366. Even taking Senator Oliver's allegations as true that Chief Clerk Humphrey prevented her from voting on legislation (and to be clear, he did not), that action would have been, and the other consequences were, a direct result from Senator Oliver's breach of decorum by standing on her desk, unfurling a banner, and disrupting the proceedings of the Tennessee Senate—conduct that should not be tolerated in any formal government proceeding. Thus, Lieutenant Governor McNally, and the other Defendants under his direction, carried out the power vested in him by the Permanent Senate Rules and "[carried] out the will of the body by enforcing the rule[s] as part of their official duties." *See Harwood*, 69 F.3d at 631 (citing *Consumers Union of the U.S. v. Periodical Correspondents' Ass'n*, 515 F.2d

1341, 1348–50 (D.C. Cir. 1975) (holding congressional employees' actions in enforcing Congress's internal seating regulations immune under Speech or Debate Clause), cert. denied, 423 U.S. 1051 (1976); *see also Davids v. Akers*, 549 F.2d 120, 123 (9th Cir. 1977) (dismissing action challenging internal rules for committee assignments brought by members of the Arizona House of Representatives against the Speaker). In sum, Defendants' acts were legislative.

Further, whether an act is legislative "turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523, U.S. at 54. The motive behind Defendants' discipline of Senator Oliver is irrelevant. "The claim of an unworthy purpose does not destroy the privilege." *Tenney*, 341 U.S. at 377. Indeed, even allegations of motivations to "single[] out" or "intimidate and silence" are immaterial. *Bogan*, 523 U.S. at 55. Defendants are thus shielded by legislative immunity, and the complaint should be dismissed in its entirety.

## II. This Court Lacks Subject-Matter Jurisdiction Over Some Claims Due To Plaintiffs' Lack of Standing and Sovereign Immunity.

Some claims should also be dismissed under Rule 12(b)(1) because this Court lacks subject matter jurisdiction for additional reasons. The Constituent Plaintiffs lack standing because they allege only a generalized grievance resulting from Senator Oliver's discipline. All Plaintiffs lack standing for injunctive relief predicated on Senator Oliver's inability to vote because Defendants cannot redress that alleged injury. Additionally, sovereign immunity bars both Plaintiffs' claims under state law and Plaintiffs' requests for injunctive relief against Defendants in their official capacity that are predicated on Senator Oliver's inability to vote.

### A. Plaintiffs lack standing for multiple claims in the Complaint.

Article III limits federal-court jurisdiction to "Cases" and "Controversies." U.S. Const. Art. III, § 2, cl. 1. Requiring a plaintiff to demonstrate standing "gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (internal quotation marks omitted). To

establish standing, a plaintiff must show that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "[S]tanding is not dispensed in gross," *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)), so a plaintiff "must demonstrate standing for each claim they seek to press" against "*each* of the defendants," *id.* (cleaned up).

**1. The Constituent Plaintiffs fail to allege a "concrete and particularized" injury to their personal rights.**

The Constituent Plaintiffs allege only a generalized grievance shared by numerous people. An injury in fact cannot be "conjectural or hypothetical;" it must be "concrete and particularized," as well as "actual or imminent." *Carney v. Adams*, 592 U.S. 53, 58 (2020). The Constituent Plaintiffs cannot meet this requirement because they assert "a generalized, abstract grievance shared by a large number of similarly situate people." *See Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 258 (3d Cir. 2009) (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 482-83 (1982)). Federal courts do not adjudicate such grievances because they can be "pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian Coll.*, 454 U.S. at 474-75 (citing *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975)).

The Constituent Plaintiffs' alleged injuries are classically non-specific. They complain of the inability for "future generations to be able to look back" at the legislative record to see Senator Oliver's stance on redistricting issues, the lack of their opposition to a political issue being "registered through Senator Oliver's vote," and a "diminish[ment]" of Senator Oliver's representation of them. Compl. ¶¶ 82-85. None of those gripes amount to "directly suffer[ing] an actual injury to" their personal rights. *Common Cause of Pennsylvania*, 558 F.3d at 260. Rather, they all involve a general interest in the accuracy of the legislative record that all Tennesseans share. Such injuries cannot confer constitutional standing. *See id.* at 268. The same goes for their allegations that Senator Oliver's discipline harmed

them because they believe in and trust her as their representative. Compl. ¶¶ 86-90. Claims about the denial of a representative's opportunity to draft, debate, and amend legislation present only a generalized grievance "shared by most [constituents]." *Id.*; *see also Swanson v. Burns*, No. 1:25-CV-00701-TRJ, 2026 WL 974843, at *3 (N.D. Ga. Feb. 25, 2026) (holding that constituents lacked standing to assert claims related to their representative's exclusion at the State of the State session). These allegations about "future generations," trust, and abstract representation are "conjectural or hypothetical" at best, and all of them present only a generalized grievance. Thus, the Constituent Plaintiffs' claims in Count IV and V should be dismissed.

**2. Plaintiffs lack standing to request injunctive relief predicated on Senator Oliver's inability to vote.**

The fact that Senator Oliver did not vote on H.B. 7003 is in the past. Whether Senator Oliver's inability to vote is attributable to her failure to press the button, or to Defendants as she alleges, her vote cannot be counted now. Plaintiffs request an injunction "ordering Chief Clerk Humphrey to amend the Tennessee Senate Journal to reflect Senator Oliver's vote against H.B. 7003 during the Second Extraordinary Session of the 114th General Assembly." Compl. ¶ b (prayer for relief). But that form of relief is unavailable because the journal cannot be altered now. Thus, claims requesting injunctive relief related to her inability to vote are not redressable by the Defendants.

As explained by Lieutenant Governor McNally, Senator Oliver was not prevented from voting: "[t]he vote had been called and the board was closed, just as it was for every other Senator." Compl. ¶ 70. Senator Oliver simply did not cast a vote, as evidenced by the fact that "her name still appeared in white text on the voting board instead of red." *Id.*, ¶ 47. And though she alleges that "her button had been turned off intentionally," she fails to allege by whom, when, where, or how that is even possible. *Id.*, ¶ 47. Though Chief Clerk Humphrey is permitted to allow oral votes upon request by a Senator, as alleged by Plaintiffs, *Id.*, ¶ 46, Senator Oliver does not claim to have made such a request. She could have made a request—as she alleges Senator Yarbro did. *Id.*, ¶ 48. But she

was too busy standing on top of her desk and singing. *Id.*, ¶ 43. Senator Oliver claims it is "not clear" how she could have voted, *Id.*, ¶ 72, but Senator Yarbro exhibited exactly how she could have voted. When the time came to cast her vote, Senator Oliver chose to cause disruption on the Senate floor rather than ensure that her vote was counted. And now, it's too late.

The Permanent Senate Rules set basic rules for Senators' votes. "A member shall vote only at his desk and, when the electrical roll call system is used, he or she shall vote only through the use of such system." Permanent Senate Rule 59. And "[a]ny member may change his vote on a roll call prior to the result being announced by the Speaker or by the Clerk of the Senate." *Id.* Rule 60. A Senator may have their vote explained in the Senate Journal "by reducing his explanation to writing and handing the same to the clerk" immediately after the Speaker has announced the result of the vote. *Id.* Rule 61. And Senator Oliver chose not to ask Chief Clerk Humphrey to allow an oral vote. The Permanent Senate Rules do not provide a mechanism by which Lieutenant Governor McNally or Chief Clerk Humphrey may count a vote outside the legislative session, even if ordered to do so by a court.

And at this point, the Senate Journal cannot be amended to reflect a vote by Senator Oliver. The Senate Journal of the proceedings from the second extraordinary session of the 114th General Assembly has already been approved by successful motion. *See* Rough Journal Excerpts, Ex. 2. After the Senate Journal is approved, it can be altered only by the Senate. But the Senate adjourned *sine die* on May 7, 2026, by joint resolution with the House. H.J.R. 7022, 114th Gen. Assem. (2026), https://perma.cc/K552-YHEX (last visited Oct. 23, 2026); Senate Session Live Stream, May 7, 2026, https://perma.cc/MG72-Q3L7 (last visited Oct. 23, 2026). Once adjourned *sine die*, that General Assembly is legally dissolved. *See Johnson City v. Tenn. E. Elec. Co.*, 182 S.W. 587, 590 (Tenn. 1915). Neither Lieutenant Governor McNally nor Chief Clerk Humphrey can unilaterally alter the content of the Senate Journal from the extraordinary session of the 114th General Assembly. Therefore, no

order from this Court to the defendants could redress the claims that Senator Oliver's supposed "no" vote should have been recorded. *See R.K. by and through J.K. v. Lee*, 53 F.4th 995, 1001 (6th Cir. 2022) ("[P]rospective relief can redress a future injury only if 'the court [may] enjoin[] not the execution [of] the statute, but the acts of the official, the statute notwithstanding.'") (citation omitted). Thus, Plaintiffs' claims predicated on Senator Oliver's inability to vote and their request for injunctive relief ordering amendment of the Senate Journal should be dismissed.

### B. Sovereign immunity bars Plaintiffs' claims for injunctive relief against Defendants in their official capacity predicated on Senator Oliver's inability to vote.

Plaintiffs' request for amendment of the Senate Journal is also barred by sovereign immunity. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office," *Will v. Mich Dep't of State Police*, 491 U.S. 58, 71 (1989), that is, "the State itself," *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). And a State is not "amenable to the suit of an individual without its consent." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting *Hans v. Louisiana*, 134 U.S. 1, 13 (1890)). The State of Tennessee has not consented to suit, nor has Congress abrogated its immunity. *Wingo v. Tennessee Dep't of Corr.,* 499 F. App'x 453, 454 (6th Cir. 2012); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

To proceed, Plaintiffs must demonstrate they meet the narrow requirements of *Ex parte Young*, 209 U.S. 123 (1908). They cannot. The *Ex parte Young* doctrine "applies only when the plaintiff sues for 'prospective [injunctive] relief to end a continuing violation of federal law.'" *Morgan v. Bd. of Pro. Resp.*, 63 F.4th 510, 515 (6th Cir. 2023) (quoting *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013)).[5] But if the plaintiff's complaint does not "'make clear what those ongoing violations are,' the exception does not apply." *Id.* (quoting *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017)).

---

[5] Prospective injunctive relief against Lieutenant Governor McNally or Chief Clerk Humphrey in their individual capacity is not available under Section 1983. *See Greenawalt v. Indiana Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials

*Ex parte Young* does not apply to Plaintiffs' request about the Senate Journal because they do not identify any ongoing violation of federal law by Chief Clerk Humphrey. The creation of the Senate Journal is complete and its content approved by the Senate. *See* Rough Journal Excerpts, Ex. 2. Plaintiffs seek retroactive relief in the form of changing the Senate Journal—something which cannot be done.

Even if the absence of a vote from Senator Oliver in the journal is an ongoing violation of federal law, the relief sought by Plaintiffs would require this Court to assert control over the internal operation of the Tennessee Senate—not merely Chief Clerk Humphrey. Plaintiffs' requested relief therefore targets the sovereign, not individual officers, as it would "interfere with the public administration" and "restrain the Government from acting" or "compel it to act." *Dugan v. Rank*, 372 U.S. 609, 620 (1963) (citations omitted); *see also Hawaii v. Gordon*, 373 U.S. 57, 58 (1963). Plaintiffs' request for injunctive relief ordering amendment of the Senate Journal thus goes beyond *Ex parte Young* and seeks "relief against" the State of Tennessee itself, which "is barred" by sovereign immunity. *TransAmerica Assur. Corp. v. Settlement Cap. Corp.*, 489 F.3d 256, 260 (6th Cir. 2007) (quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 687 (1949)). Indeed, it was "well settled" long before *Ex parte Young* "that a suit … to *compel* [state officers] to do [certain] acts … is, in effect, a suit against the state." *Pennoyer v. McConnaughy*, 140 U.S. 1, 9 (1891) (emphasis added). Sovereign immunity provides a second reason why Plaintiffs' claims predicated on Senator Oliver's inability to vote and their request for injunctive relief ordering amendment of the Senate Journal should be dismissed.

---

sued in their individual as distinct from their official capacity."); *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." (citing *Hafter v. Melo*, 502 U.S. 21, 30, 27 (1991))).

### C. Sovereign immunity bars Plaintiffs' state-law claims.

This Court also cannot entertain Plaintiffs' claim in Count V, which alleges violations of Article II, Section 12 of the Tennessee Constitution. Compl., ¶¶ 131-137. "Case law is legion that" federal courts may not "order[] state officials to conform their conduct to state law." *Johns v. Sup. Ct. of Ohio*, 753 F.2d 524, 526 (6th Cir. 1985); *see, e.g., Combs v. Wilkinson*, 315 F.3d 548, 560 (6th Cir. 2002). As the Supreme Court has explained, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Yet that is precisely what Plaintiffs seek in Count V. *See* Compl., ¶¶ 131-137, a. (Prayer for Relief). This Court lacks jurisdiction to adjudicate Count V.

## III. Plaintiffs' Claims Are Barred by Qualified Immunity.

Qualified immunity independently bars Plaintiffs' claims for damages against Lieutenant Governor McNally and Chief Clerk Humphrey in their individual capacities. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). It is not merely a defense to liability, but a shield for public officials against the burdens of litigation and trial. *See Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009). The Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Id.* at 232 (citation omitted); *see also*, *e.g.*, *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 762 (6th Cir. 2020) ("[D]espite the general preference to save qualified immunity for summary judgment, sometimes it's best resolved in a motion to dismiss.").

To overcome qualified immunity, the plaintiff must show that the government official "violate[d] a clearly established statutory or constitutional rights." *Id.* at 231 (citation omitted). This requires the plaintiff to show both (1) that a constitutionally protected right was violated and (2) that

the right was clearly established. *Brennan v. Township of Northville*, 78 F.3d 1152, 1154 (6th Cir. 1996). If a plaintiff fails to establish either prong, he has failed to carry his burden, and since the failure of either prong is dispositive in favor of a defendant, the Court may address either prong first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Plaintiffs cannot make that showing here. For the reasons explained below, Plaintiff has failed to allege any constitutional violation. *See infra* Part IV. And even if Plaintiffs had, there is no "pre-existing law" that makes "the unlawfulness . . . apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Plaintiffs allege that the disciplinary consequence of Senator Oliver's abandonment of all decorum in the Senate chamber violated their constitutional rights. But Plaintiffs' generic references to the First Amendment and the Equal Protection Clause are not sufficient. The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). So, to overcome qualified immunity, Plaintiffs must supply authorities that "clearly establish" that a legislator has an unqualified right to disrupt an active legislative session. In turn, the Constituent Plaintiffs would need to demonstrate that they have independent rights to be represented by a disruptive legislator. But prevailing authority stands for just the opposite. *Infra*, IV(C). Because such authorities do not exist, it would not be "sufficiently clear" to "a reasonable official" that legislative actions taken to address that inappropriate behavior would be unconstitutional. *Id.* Thus, Plaintiffs' claims for damages are barred by qualified immunity.

## IV. Plaintiffs Fail to State a Claim on Which Relief May Be Granted.

Were the Court to bypass the legislative immunity, standing, sovereign immunity, and qualified immunity bars to the complaint, it should also be dismissed under Rule 12(b)(6) because it fails to state meritorious claims for violations of the rights of free speech, freedom of association, or equal protection or for violation of the Tennessee Constitution.

### A. Senator Oliver fails to state a claim under the First Amendment Right to Free Speech.

The First Amendment protects the freedom of speech, but it "does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *Heffron v. Int'l Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981) (citation omitted). The legislative context "is a unique setting where ordinary notions of First Amendment protection sometimes yield to the political nature of democratic governance." *McGuinn v. Smith*, No. 11-CV-4761, 2015 WL 12731755, at *6 (S.D.N.Y. 2015); *see also*, *e.g.*, *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir. 1990) ("Principles that apply to random discourse may not be transferred without adjustment to this more structured situation."). Federal courts should "exercise a respectful reluctance to interfere in the measures taken by a state legislature to regulate its affairs, discipline its members, and protect the integrity and good name." *Monserrate v. N.Y. State Senate*, 599 F.3d 148, 157 (2d Cir. 2010).

To prevail on a First Amendment retaliation claim, a plaintiff must establish the three elements of a prima facie case of retaliation: (1) the plaintiff engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Curtis v. Breathitt Cnty. Fiscal Ct.*, 756 F. App'x 519, 522 (6th Cir. 2018) (quotations omitted). Only the first and third elements are at issue here. Translating those elements to the case at hand, Senator Oliver must show that standing on her desk, holding a banner, and singing on the Senate floor is protected by the Constitution and that her discipline was connected to that protected conduct. She fails to adequately plead those requirements.

Senator Oliver did not engage in protected speech or conduct on the Senate floor. In Counts I and II, Senator Oliver alleges that Defendants retaliated against Senator Oliver's protected speech on the floor, Compl. ¶ 98, and that Defendants' discipline has the "purpose and effect of suppressing

her core political speech based on its content and viewpoint." Compl. ¶ 111. But Senator Oliver has no more right than any other legislator to break decorum on the Senate floor.

"A governmental body has significant discretion to regulate its own meetings in the manner that it sees fit." *Shields v. Charter Twp. of Comstock*, 617 F. Supp. 2d 606, 613 (W.D. Mich 2009). And legislative rules must be "reasonable and viewpoint neutral, but that is all they need be." *Gault v. City of Battle Creek*, 73 F.3d 266, 271 (9th Cir. 1995). When members of the Oregon legislature brought a retaliation suit based on their "walkout" from the legislative chamber, the Ninth Circuit held that their "argument falters at the outset because they cannot show that their walkout was constitutionally protected activity." *Linthicum v. Wagner*, 94 F.4th 887, 892 (9th Cir. 2024). Senator Oliver's protest on the senate floor is an exercise of legislative power, not her own speech. *See id.* (rejecting an argument that a legislator's walkout is "anything other than an exercise of legislative power"). The Permanent Senate Rule on decorum prohibits disruptions—not protected expression. So Senator Oliver flunks the first element of a retaliation claim.

To the extent that Senator Oliver attempts to assert that her vote is also protected by the First Amendment, the Supreme Court has foreclosed that argument. *Nevada Com'n on Ethics v. Carrigan,* 564 U.S. 117, 125-27 (2011) ("But how can it be that restrictions upon legislators' voting are not restrictions upon legislators' protected speech? The answer is that a legislator's vote is a commitment of his apportioned share of the legislature's power to the passage or defeat of a particular proposal."). Neither does Senator Oliver's discipline unconstitutionally suppress her speech. She remains free to protest on any political topic of her choice and to represent her constituents in the General Assembly. *See* Compl. ¶ 110. Senator Oliver has failed to show that Defendants retaliated against or suppressed protected speech.

Moreover, Senator Oliver's allegations do not establish the requisite "causal connection" between the content of her speech and the alleged adverse actions. *Thaddeus-X v. Blatter*, 175 F.3d 378,

394 (6th Cir. 1999) (en banc) (holding that to state a viable retaliation claim, the complaint must include facts that establish the necessary elements of protected activity, an adverse action sufficient to deter a person of ordinary firmness, and the requisite causal relationship.) Senator Oliver "was disciplined for [her] lack of decorum, not for expressing [her] view on policy." *Whitener*, 112 F3d at 745. As Lieutenant Governor McNally's letter to Senator Oliver explained, "This letter is to inform you that your actions on the Senate Floor on May 7, 2026 violate the Permanent Senate Rules regarding order and decorum in the chamber. In watching the video footage, it was observed that you stood on your desk in the chamber, unfurled a banner that you resisted handing over to the sergeant of arms when he requested you to do so, and sang while dancing on your desk." McNally Letter, Dkt. 1-1. When describing her actions for which she was disciplined, the Complaint includes pictures of Senator Oliver standing on her desk on the Senate Floor, banner in hand. Compl. ¶ 44. And she does not try to claim that she remained within her allotted time to speak, she explains that she "completed her remarks without amplification." Compl. ¶ 43. Senator Oliver cannot untie her discipline from her conduct.

**B. Senator Oliver fails to state a claim under the First Amendment Right to Freedom of Association.**

In Count III, Senator Oliver claims that Lieutenant Governor McNally and Chief Clerk Humphrey "have stifled her expressive association with her constituents, her colleagues, and others, as well as her advocacy for her constituents' interests." Compl. ¶ 120. But again, Senator Oliver was disciplined for her lack of decorum, not for any association. And Senator Oliver does not allege *how* her discipline has any effect on her ability to associate.

Senator Oliver describes her claims as related to "protected expression in association with and on behalf of her constituents and others." Compl. ¶ 119. Freedom of expressive association is a form of constitutional protected associational rights, necessarily attendant to the Bill of Rights' protection of individual liberties. *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984). The right to expressive association protects collective activity undertaken to advance shared beliefs. *Roberts*, 468

U.S. at 622-23. The right of expressive association is the First Amendment right to associate for the purpose of speaking. *Rumsfeld v. Forum For Academic and Inst. Rights, Inc.*, 547 U.S. 47, 68 (2006). The right protects a group's membership decisions and shield them from laws that make group membership less attractive without directly interfering in an organization's composition, "such as requiring groups to disclose their membership lists or imposing penalties based on membership in a disfavored group." *Miller v. City of Cincinnati*, 622 F.3d 524, 537 (6th Cir. 2010) (citations omitted).

Senator Oliver fails to plead a cause of action for violating her right to expressive association. She merely recasts her freedom of speech claims from Counts I and II as a freedom of association claim in Court III. The Complaint conclusorily alleges that Lieutenant Governor McNally and Chief Clerk Humphrey have "stifled her expressive association with her constituents, her colleagues, and other, as well as her advocacy for her constituents' interests." Compl., ¶ 120. But the Complaint contains no allegation that Defendants' actions affected a group's membership decisions or made group membership less attractive. *See Miller*, 622 F.3d at 537. Moreover, Defendants' discipline of her has no bearing on with whom she may choose to associate. Senator Oliver does not allege that Defendants have excluded her from any group engaged in expressive activity. Compl. ¶¶ 114-21. And Senator Oliver's associational rights do not extend to an entitlement to state funding for her preferred activities. Her strained attempt to connect her committee reassignment or denied travel reimbursement to her freedom to associate fails to state a cognizable freedom of association claim. Counts I, II, and III should thus be dismissed.

**C. Plaintiffs fail to state a viable Equal Protection claim.**

The complaint also fails to demonstrate that Senator Oliver or the Constituent Plaintiffs were subjected to disparate treatment by any Defendant, and they allege no facts to support a plausible inference of racially discriminatory intent. The Equal Protection Clause ensures that "similarly situated individuals" are treated "in a similar manner." *Buchanan v. City of Bolivar*, 99F.3d 1352, 1360 (6th Cir.

1996) (citation omitted). Individuals are similarly situated when they "are in all relevant respects alike," *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992), or do not "differ in several material respects," *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005). Here, Plaintiffs allege that Defendants violated equal protection because Senator Oliver's inability to vote on H.B. 7003 "dilutes Constituent Plaintiffs' votes." Compl. ¶ 129. And they claim that denial of her reimbursement and preferred committee assignment "denies her constituents equal representation in the General Assembly. Compl. ¶ 130.

Those allegations do not show dissimilar treatment of similarly situated individuals. *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379-80 (6th Cir. 2011). As comparators, Plaintiffs identify other senators, who merely stood in the well. Compl. ¶ 48. But those senators are not "similarly situated" to Senator Oliver, who stood on her desk, displayed a banner, and sang beyond her recognized time to speak. Compl. ¶¶ 42-48, 53, 57. Not only do Plaintiffs admit Senator Oliver's behavior was different, Compl. ¶ 43, the Court can see the dissimilarity with its own eyes, Senate Session Live Stream, May 7, 2026, https://perma.cc/MG72-Q3L7 (last visited Oct. 23, 2026). The only legislators that *have* recently engaged in similarly disruptive conduct have faced similar—or more severe—discipline. *See Jones*, 2025 WL 3000203, at *2 (recounting that Plaintiff has removed from his committee assignments and expelled from the House of Representatives). The failure to identify a similarly situated senator who was treated differently is fatal to an equal protection claim premised on a disparate disciplinary response. *See Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 987 (6th Cir. 2012) (holding that because Plaintiff could not establish similarly situated entities were treated differently, defendants did not violate its right to equal protection).

And Plaintiffs' atmospheric allusions to race and the composition of Senator Oliver's district, Compl. ¶ 23-38, 128, do not establish that a particular defendant purposefully classified Plaintiffs by race or made race-motivated decisions. Proving discrimination requires showing a "decision maker's undertaking a course of action because of not merely in spite of the action's adverse effects upon an

identifiable group." *Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) (citations omitted and cleaned up). Speculating about the racial motives behind Tennessee's 2026 redistricting does not show that Defendants racially discriminated against Senator Oliver or her constituents by maintaining decorum on the floor. *See Nali v. Ekman*, 355 Fed Appx. 909, 913 (6th Cir. 2009) ("[A] complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief.") (citation omitted). Besides, a plaintiff in this district has already failed on her race-discrimination challenge to the redistricting directly. *Moses v. Lee*, No. 3:26-CV-00694, 2026 WL 2884879, at *5-*6 (M.D. Tenn. Sept. 25, 2026) (stating that plaintiff's equal protection claims "don't get off the ground"). At any rate, Plaintiffs' conclusory assertion that any less favorable treatment of Senator Oliver necessarily constitutes unconstitutional electoral dilution or unequal constituent services does not state a claim upon which relief may be granted.

Instead of making out the basic elements of an Equal Protection claim, Plaintiffs instead appeal to inapposite principles from cases about elections. Begin with their appeal to the "one-person-one-vote" principle of *Reynolds v. Sims*, 377 U.S. 533, 568 (1964). The Constituent Plaintiffs do not allege that their 2022 votes for Senator Oliver were rejected, counted at a different weight, or used to elect fewer senators per person than ballots in other districts. Instead, they allege that Senator Oliver did not vote on one bill and lost some opportunities to conduct legislative work at public expense. Compl. ¶¶ 124-30. Those allegations simply cannot be equated with electoral malapportionment. *See, e.g.*, *Davids v. Akers*, 549 F.2d 120, 124-25 (9th Cir. 1977) (holding that denial of membership on a legislative committee to democratic members of the legislature does not violate democratic voters' right to equal protection). Count IV should therefore be dismissed insofar as it claims that reduced state funding for Senator Oliver's chosen conferences, per diem, or constituent-service activity violates "one-person-one-vote."

Next consider their attempt to analogize their claims to *Bush v. Gore*, 531 U.S. 98 (2000). They recite the Supreme Court's statement that "'[e]qual protection applies to 'the initial allocation of the franchise' and 'the manner of its exercise.'" Compl. ¶ 126 (quoting *Bush*, 531 U.S. at 104). But *Bush* concerned "the manner" of exercising an individual's right to vote for their chosen candidate in the context of "unequal evaluation of ballots" when recounting votes cast in a presidential election. *Bush*, 531 U.S. at 104-106. That is not the case here. Senator Oliver's inability to vote on H.B. 7003 has no bearing on the manner of Constituent Plaintiffs' vote for Senator Oliver back in 2022.

At bottom, Plaintiffs cannot show that Defendants treated Senator Oliver differently than any other similarly situated Senator or discriminated against her and her constituents because of their race. So Count IV must be dismissed.

**D. Plaintiffs fail to state a claim under the Tennessee Constitution.**

Article II, Section 12 of the Tennessee Constitution empowers each house to determine its proceedings, discipline members, and, with the required supermajority, expel a member. Plaintiffs claim in Count V that provision prohibits every adverse committee or expense decision unless separately approved by the full Senate. Compl. ¶¶ 132-36. But the text does not prescribe a separate floor vote for every exercise of delegated administrative power.

Lieutenant Governor McNally is entrusted with the power to appoint all Senate committees, subject to the Senate's express directions and the listed considerations. *See* Permanent Senate Rule 73. And in passing the Permanent Senate Rules, the Senate entrusted Lieutenant Governor McNally with preserving order and decorum, which gives him the authority to discipline members. *See* Permanent Senate Rule 2. Additionally, Tennessee Code Annotated § 3-1-106(a), (b)(2) conditions reimbursement for the described meetings and out-of-state expenses on Lieutenant Governor McNally's approval or direction. The Complaint ignores Lieutenant Governor McNally's stewardship over committees and member's expenses, and instead presents his denial of those benefits to Senator

Oliver as a violation of an unconditional right. But even Article II, Section 23 of the Tennessee Constitution, which provides for compensation of legislators, refers to allowances as "provided by law." The Tennessee Constitution does not prohibit the Lieutenant Governor from accounting for Senator Oliver's disruptive behavior when exercising his discretion on committee assignments or reimbursement. Accordingly, Count V fails because it rests on the erroneous precept that committee reassignment or withholding discretionary expense approval always requires a new full-Senate vote.

## CONCLUSION

For these reasons, the Complaint should be dismissed in its entirety.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

*<u>/s/ Zachary L. Barker</u>*
ZACHARY L. BARKER
Senior Assistant Attorney General
Constitutional Defense Division
B.P.R. No. 035933
P.O. Box 20207
Nashville, Tennessee 37202
(615) 532-4098
Zachary.Barker@ag.tn.gov

## CERTIFICATE OF SERVICE

I certify that the foregoing Motion and Memorandum was filed electronically on October 26, 2026. A true and correct copy of that filing was forwarded on the same day via the Court's CM/ECF system upon the following:

Ellen Boettcher
Dana M. Paikowsky
Campaign Legal Center
1333 New Hampshire Ave. NW
Suite 300
Washington, DC 20036
Email: eboettcher@campaignlegalcenter.org
Email: dpaikowsky@campaignlegalcenter.org

Jonathan L. Backer
Elizabeth Cruikshank
William Powell
Institute for Constitutional Advocacy and Protection
Georgetown University Law Center
600 New Jersey Ave., N.W.
Washington, DC 20001
Email: jb2845@georgetown.edu
Email: erc56@georgetown.edu
Email: whp25@georgetown.edu

Scott P. Tift
Barrett Johnston Martin & Garrison, LLC
200 31st Avenue North
Nashville, TN 37203
Email: stift@barrettjohnston.com

/s/ *Zachary L. Barker*
ZACHARY L. BARKER
Senior Assistant Attorney General